**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| PACIFIC PREMIER BANK, | § | |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-00312-B |
| | § | |
| GROUP MIDLAND HOTELS, LLC, and | § | |
| CHETNA HIRA, | § | |
| *Defendants*. | § | |

**APPENDIX IN SUPPORT OF PLAINTIFF PACIFIC PREMIER BANK'S BRIEF IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiff Pacific Premier Bank hereby submits it Appendix in Support of its Brief in

Support of its Motion for Summary Judgment as follows:

| DESCRIPTION | APPENDIX PAGE(S) |
|---|---|
| **Exhibit A**: Affidavit of Mark Whalen. | App. 1-5 |
| **Exhibit A-1**: Loan agreement dated December 3, 2012, executed by PPB, as lender, and GMH, as borrower, under which GMH borrowed from PPB $2,440,000.00. | App. 6-13 |
| **Exhibit A-2**: U.S. Small Business Administration Note dated December 10, 2012, executed by GMH and delivered to PPB in the principal amount of $2,440,000.00. | App. 14-16 |
| **Exhibit A-3**: Unconditional guarantee agreement dated December 3, 2012, executed by Hira, which unconditionally guaranteed GMH's payment obligations under the Note to PPB. | App. 17-19 |
| **Exhibit A-4:** Demand letters from PPB to GMH and Hira. | App. 20-29 |
| **Exhibit B:** Affidavit of Robert P. Latham | App. 30-33 |
| **Exhibit B-1**: Hira's Responses to PPB's First Set of Discovery Requests. | App. 34-47 |
| **Exhibit B-2 <u>FILED UNDER SEAL</u>**: Attorneys' Fees Invoices from Jackson Walker LLP to PPB. | App. 48-65 |

Respectfully submitted,

JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone:  (214) 953-6000


By:  */s/ Robert P. Latham*
    Robert P. Latham
    State Bar No. 11975500
    Email:  blatham@jw.com
    Lindsey E. Marsh
    State Bar No. 24087977
    Email: lmarsh@jw.com
    **ATTORNEYS FOR PLAINTIFF**
    **PACIFIC PREMIER BANK**


## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on May 24, 2017, true and correct copies of the foregoing were served on all parties of record via the electronic case filing notification system.

                    */s/ Lindsey E. Marsh*
                    Lindsey E. Marsh

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PACIFIC PREMIER BANK, | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:17-CV-00312-B |
| | § | |
| GROUP MIDLAND HOTELS, LLC, and | § | |
| CHETNA HIRA, | § | |
| *Defendants.* | § | |

## AFFIDAVIT OF MARK D. WHALEN

| | |
|---|---|
| STATE OF CALIFORNIA | § |
| | § |
| COUNTY OF ORANGE | § |

Before me, the undersigned authority, on this day personally appeared Mark D. Whalen, who upon his oath, deposed and stated as follows:

1.     My name is Mark D. Whalen, I am over the age of 21, am competent to testify, and the matters set forth herein are based upon my personal knowledge.

2.     I am presently employed by Pacific Premier Bank ("PPB") as a Senior Vice President and Director of Portfolio Management. The facts set forth in this affidavit are based on my personal knowledge, all of which are true and correct. My personal knowledge is derived from my involvement with the transactions and agreements between PPB, Group Midland Hotels, LLC ("GMH"), and Chetna Hira ("Hira").

3.     This Affidavit is given in support of PPB's Motion for Summary Judgment.

4.     I am a custodian of the records of PPB. Attached hereto as Exhibits A-1 through Exhibit A-4 are records from PPB relating to the debts at issue. These documents are true and correct copies of the originals. These records are kept by PPB in the regular course of business, and it was the regular course of business for an employee or representative of PPB, with

knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter.

5.      Attached as Exhibits A-1–A-4 are true and correct copies of the following documents obtained from PPB's files and records:

A-1:    Loan Agreement, dated December 3, 2012, by and between GMH and PPB (the "Loan Agreement").

A-2:    U.S. Small Business Administration Note, dated December 10, 2012, by and between Hira and PPB (the "Note").

A-3:    Guaranty Agreement, dated December 3, 2012, by and between Hira and PPB (the "Guaranty").

A-4:    Letters to Hira and GMH regarding demand for payment under the Loan Documents and Foreclosure of Collateral, dated April 13, 2015, January 20, 2016, March 17, 2016, and August 12, 2016 (the "Demand Letters").

6.      On December 3, 2012, PPB, as lender, and GMH, as borrower, executed the Loan Agreement, under which GMH borrowed from PPB $2,440,000.00.

7.      On December 10, 2012, GMH executed and delivered to PPB the Note in the principal amount of $2,440,000.00.  Under the terms of the Note, GMH was obligated to pay principal and interest payments of $15,724.30 (the "Note Payment") on the first day of every month, beginning February 1, 2013, and continuing through January 1, 2038, at which time, the remaining amount of principal and accrued unpaid interest was payable in full.  The Note provides that, among other things, GMH's failure to make any payment when due under the Note is an event of default.

8.      In accordance with the terms of the Note and Loan Agreement, PPB timely advanced funds to GMH.

**EXHIBIT A**

**App. 002**

9.     On December 3, 2012, and in connection with the Loan Agreement and Note, Hira entered into an unconditional guaranty agreement.    The Guaranty is an unconditional guaranty of GMH's payment obligations under the Note to PPB.

10.     PPB is the legal owner and holder of the Note and the Guaranty.

11.     Since 2015, GMH has failed to make timely Note Payments to PPB.  On April 13, 2015, January 20, 2016, and March 17, 2016, PPB made repeated demands for payment from Defendants, as shown in Exhibit A-4.

12.     On August 1, 2016, GMH failed to pay the amounts due under the Note and Loan Agreement, and GMH has failed to make any further payments under the Note.  On August 12, 2016, PPB provided demand to GMH and Hira for the amounts due under the Note and Guaranty.  *See* Exhibit A-4.  Hira has failed and refused to make payments required by the Guaranty.

13.     As of May 4, 2017, a balance of $2,411,749.19 remains due and owing on the Note after taking into account any offsets and credits. This amount is comprised of $2,295,647.96 in principal, $119,438.38 in interest, and $8,662.85 in late charges and fees.   An offset for adequate protection payments made by GMH in the bankruptcy lawsuit has been included in the amount of $12,000.00.  Interest continues to accrue in the amount of $424.54 per day on the Note.  This figure does not include any costs or attorneys' fees which are owed to PPB by Hira.

14.     PPB was required to retain the services of Jackson Walker LLP to collect the indebtedness owed by GMH and Hira.

FURTHER AFFIANT SAITH NOT.

_____
Mark D. Whalen

SUBSCRIBED AND SWORN TO BEFORE ME, on this _23_ day of May, 2017.

_____
Notary Public in and for the State of California

My Commission Expires:

_____

SEE ATTACHED

# JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of *Orange*

Subscribed and sworn to (or affirmed) before me on this 23RD day of *May*

20 17 by *Mark D. Whalen*,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____    (Seal)
Signature



GRISEL M. ABASSI
COMM. #2069986
Notary Public - California
Orange County
My Comm. Expires May 31, 2018

---

## OPTIONAL INFORMATION

DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
Additional information

## INSTRUCTIONS

The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information Is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

2015 Version www.NotaryClasses.com 800-873-9865

**EXHIBIT A**



**BUSINESS LOAN AGREEMENT**

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $2,440,000.00 | 12-03-2012 | 01-01-2038 | 62-700159-22 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Group Midland Hotels, LLC, a Texas limited liability
company
2500 Commerce Drive
Midland, TX 79703

**Lender:** Pacific Premier Bank
17901 Von Karman, 12th Floor
Irvine, CA 92614
(714) 431-4000

THIS BUSINESS LOAN AGREEMENT dated December 3, 2012, is made and executed between Group Midland Hotels, LLC, a Texas limited liability company ("Borrower") and Pacific Premier Bank ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement. This Agreement shall apply to any and all present and future loans, loan advances, extension of credit, financial accommodations and other agreements and undertakings of every nature and kind that may be entered into by and between Borrower and Lender now and in the future.

**TERM.** This Agreement shall be effective as of December 3, 2012, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) subordinations; (7) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Texas. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 2500 Commerce Drive, Midland, TX 79703. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
|----------|----------------------|-----------------|------|
| Group Midland Hotels, LLC, a Texas limited liability company | Travelodge | Texas Secretary of State | 10-01-2012 |

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower, do not require the consent or approval of any other person, regulatory authority, or governmental body, and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties. Borrower has the power and authority to enter into the Note and the Related Documents and to grant collateral as security for the Loan. Borrower has the further power and authority to own and to hold all of Borrower's assets and properties, and to carry on Borrower's business as presently conducted.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when

**EXHIBIT A-1**

delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**Commercial Purposes.** Borrower intends to use the Loan proceeds solely for business or commercially related purposes.

**Employee Benefit Plans.** Each employee benefit plan as to which Borrower may have any liability complies in all material respects with all applicable requirements of law and regulations, and (1) no Reportable Event nor Prohibited Transaction (as defined in ERISA) has occurred with respect to any such plan, (2) Borrower has not withdrawn from any such plan or initiated steps to do so, (3) no steps have been taken to terminate any such plan or to appoint a trustee to administer such a plan, and (4) there are no unfunded liabilities other than those previously disclosed to Lender in writing.

**Investment Company Act.** Borrower is not an "investment company" or a company "controlled" by an "investment company", within the meaning of the Investment Company Act of 1940, as amended.

**Public Utility Holding Company Act.** Borrower is not a "holding company", or a "subsidiary company" of a "holding company", or an "affiliate" of a "holding company" or of a "subsidiary company" of a "holding company", within the meaning of the Public Utility Holding Company Act of 1935, as amended.

**Regulations T and U.** Borrower is not engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of Regulations T and U of the Board of Governors of the Federal Reserve System).

**Information.** All information previously furnished or which is now being furnished by Borrower to Lender for the purposes of or in connection with this Agreement or any transaction contemplated by this Agreement is, and all information furnished by or on behalf of Borrower to Lender in the future will be, true and accurate in every material respect on the date as of which such information is dated or certified; and no such information is or will be incomplete by omitting to state any material fact the omission of which would cause the information to be misleading.

**Claims and Defenses.** There are no defenses or counterclaims, offsets or other adverse claims, demands or actions of any kind, personal or otherwise, that Borrower, any Grantor, or any Guarantor could assert with respect to the Note, Loan, this Agreement, or the Related Documents.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Repayment.** Repay the Loan in accordance with its terms and the terms of this Agreement.

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor. In addition,

Loan No: 62-700159-22

**BUSINESS LOAN AGREEMENT**
**(Continued)**

INITIAL
C.H.

Page 3

Borrower shall provide Lender with written notice of the occurrence of any Event of Default, the occurrence of any Reportable Event under, or the institution of steps by Borrower to withdraw from, or the institution of any steps to terminate, any employee benefit plan as to which Borrower may have any liability.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Borrower's balance sheet and income statement for the year ended, prepared by Borrower.

**Tax Returns.** As soon as available, but in no event later than 15 days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a certified public accountant satisfactory to Lender.

**Additional Requirements.** In addition to all other financial reporting requirements set forth in this Agreement, Borrower shall provide Lender with the following:

**Annual Schedules:** As soon as available, but in no event later than 90 days after the end of each fiscal year, Borrower shall provide Lender with a detailed real estate schedule, prepared by Borrower and any other schedules deemed appropriate by Lender.

**GUARANTOR FINANCIAL REQUIREMENTS:**

**Annual Statements.** As soon as available, but in no event later than ninety (90) days after the end of each fiscal year, Guarantor's balance sheet and income statement for the year ended, prepared by Guarantor.

**Tax Returns.** As soon as available, but in no event later than 15 days after the applicable filing date for the tax reporting period ended, Federal and other governmental tax returns, prepared by a certified public accountant.

**Annual Schedules:** As soon as available, but in no event later than 90 days after the end of each fiscal year, Guarantor shall provide Lender with a complete debt schedule and detailed real estate schedule, prepared by Guarantor and any other schedules deemed appropriate by Lender.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Chetna Hira | $2,440,000.00 |

**Subordination.** Prior to disbursement of any Loan proceeds, deliver to Lender a subordination agreement on Lender's forms, executed by Borrower's creditor named below, subordinating all of Borrower's indebtedness to such creditor, or such lesser amount as may be agreed to by Lender in writing, and any security interests in collateral securing that indebtedness to the Loans and security interests of Lender.

| Name of Creditor | Total Amount of Debt |
|---|---|
| S.A.V. TEXAS I, LLC, a Texas limited liability company | $200,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender, and in all other loan agreements now or in the future existing between Borrower and any other party. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**EXHIBIT A-1**

App. 008

**BUSINESS LOAN AGREEMENT**
(Continued)

INITIAL
C-H

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Change of Location.** Immediately notify Lender in writing of any additions to or changes in the location of Borrower's businesses.

**Title to Assets and Property.** Maintain good and marketable title to all of Borrower's assets and properties.

**Notice of Default, Litigation and ERISA Matters.** Forthwith upon learning of the occurrence of any of the following, Borrower shall provide Lender with written notice thereof, describing the same and the steps being taken by Borrower with respect thereto: (1) the occurrence of any Event of Default, or (2) the institution of, or any adverse determination in, any litigation, arbitration proceeding or governmental proceeding, or (3) the occurrence of a Reportable Event under, or the institution of steps by Borrower to withdraw from, or the institution of any steps to terminate, any employee benefit plan as to which Borrower may have any liability.

**Other Information.** From time to time Borrower will provide Lender with such other information as Lender may reasonably request.

**Employee Benefit Plans.** So long as this Agreement remains in effect, Borrower will maintain each employee benefit plan as to which Borrower may have any liability, in compliance with all applicable requirements of law and regulations.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**EXHIBIT A-1**

Loan No: 62-700159-22                                                                                           Page 5

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf, or made by Guarantor, under this Agreement or the Related Documents in connection with the obtaining of the Loan evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Collateral, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Collateral such that the present or intended use of the Collateral, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Collateral.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Borrower and the failure by Borrower to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**ADDITIONAL DOCUMENTS.** Borrower shall provide Lender with the following additional documents:

**Articles of Organization and Company Resolutions.** Borrower has provided or will provide Lender with a certified copy of Borrower's Articles of Organization, together with a certified copy of resolutions properly adopted by the members of the company, under which the members authorized one or more designated members or employees to execute this Agreement, the Note and any and all Security Agreements directly or indirectly securing repayment of the same, and to consummate the borrowings and other transactions as contemplated under this Agreement, and to consent to the remedies following any default by Borrower as provided in this Agreement and in any Security Agreements.

**Opinion of Counsel.** When required by Lender, Borrower has provided or will provide Lender with an opinion of Borrower's counsel certifying to and that: (1) Borrower's Note, any Security Agreements and this Agreement constitute valid and binding obligations on Borrower's part that are enforceable in accordance with their respective terms; (2) Borrower is validly existing and in good standing; (3) Borrower has authority to enter into this Agreement and to consummate the transactions contemplated under this Agreement; and (4) such other matters as may have been requested by Lender or by Lender's counsel.

**SUBORDINATION OF SHAREHOLDER DEBT.** Borrower shall notify Lender in writing prior to incurring any additional debt to its shareholders. Any shareholder debt that Borrower incurs after the date of this Loan shall be subordinated to any and all indebtedness that Borrower now owes or may in the future owe to Lender. Each such debt subordination shall be made according to the terms and conditions of Lender's standard debt subordination agreement, which may, among other things, prohibit any payments on the shareholder indebtedness until all indebtedness that Borrower owes Lender has been paid off and closed.

**PROHIBITION AGAINST ADDITIONAL DEBT.** Borrower shall not incur any additional debt from any third-party (with the exception of customary short term trade payable accounts and/or specific equipment financing) without the Lender's prior written consent, which consent may be withheld by Lender in its sole and absolute discretion.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**EXHIBIT A-1**

**App. 010**

BUSINESS LOAN AGREEMENT

INITIAL
*C.H.*

(Continued)

Loan No: 62-700159-22      Page 6

---

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Borrower Information.** Borrower consents to the release of information on or about Borrower by Lender in accordance with any court order, law or regulation and in response to credit inquiries concerning Borrower.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Applicable Law.** The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: (a) When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law. (b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Orange County, State of California.

**Non-Liability of Lender.** The relationship between Borrower and Lender created by this Agreement is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Borrower. Borrower is exercising Borrower's own judgment with respect to Borrower's business. All information supplied to Lender is for Lender's protection only and no other party is entitled to rely on such information. There is no duty for Lender to review, inspect, supervise or inform Borrower of any matter with respect to Borrower's business. Lender and Borrower intend that Lender may reasonably rely on all information supplied by Borrower to Lender, together with all representations and warranties given by Borrower to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notice of Lender's Breach.** Borrower must notify Lender in writing of any breach of this Agreement or the Related Documents by Lender and any other claim, cause of action or offset against Lender within thirty (30) days after the occurrence of such breach or after the accrual of such claim, cause of action or offset. Borrower waives any claim, cause of action or offset for which notice is not given in accordance with this paragraph. Lender is entitled to rely on any failure to give such notice.

**Indemnification of Lender.** Borrower agrees to indemnify, to defend and to save and hold Lender harmless from any and all claims, suits, obligations, damages, losses, costs and expenses (including, without limitation, Lender's attorneys' fees), demands, liabilities, penalties, fines and forfeitures of any nature whatsoever that may be asserted against or incurred by Lender, its officers, directors, employees, and agents arising out of, relating to, or in any manner occasioned by this Agreement and the exercise of the rights and remedies granted Lender under this, as well as by: (1) the ownership, use, operation, construction, renovation, demolition, preservation, management, repair, condition, or maintenance of any part of the Collateral; (2) the exercise of any of Borrower's rights collaterally assigned and pledged to Lender hereunder; (3) any failure of Borrower to perform any of its obligations hereunder; and/or (4) any failure of Borrower to comply with the environmental and ERISA obligations, representations and warranties set forth herein. The foregoing indemnity provisions shall survive the cancellation of this Agreement as to all matters arising or accruing prior to such cancellation and the foregoing indemnity shall survive in the event that Lender elects to exercise any of the remedies as provided under this Agreement following default hereunder. Borrower's indemnity obligations under this section shall not in any way be affected by the presence or absence of covering insurance, or by the amount of such insurance or by the failure or refusal of any insurance carrier to perform any obligation on its part under any insurance policy or policies affecting the Collateral and/or Borrower's business activities. Should any claim, action or proceeding be made or brought against Lender by reason of any event as to which Borrower's indemnification obligations apply, then, upon Lender's demand, Borrower, at its sole cost and expense, shall defend such claim, action or proceeding in Borrower's name, if necessary, by the attorneys for Borrower's insurance carrier (if such claim, action or proceeding is covered by insurance), or otherwise by such attorneys as Lender shall approve. Lender may also engage its own attorneys at its reasonable discretion to defend Borrower and to assist in its defense and Borrower agrees to pay the fees and disbursements of such attorneys.

**Counterparts.** This Agreement may be executed in multiple counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts, taken together, shall constitute one and the same Agreement.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

**EXHIBIT A-1**

Case 3:17-cv-00312-B   Document 19   Filed 05/24/17   Page 14 of 49   PageID 155

Loan No: 62-700159-22

BUSINESS LOAN AGREEMENT
(Continued)

INITIAL
C-H

Page 7

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Sole Discretion of Lender.** Whenever Lender's consent or approval is required under this Agreement, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Group Midland Hotels, LLC, a Texas limited liability company and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**ERISA.** The word "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and including all regulations and published interpretations of the act.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan, and, in each case, Borrower's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**EXHIBIT A-1**

App. 012

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Pacific Premier Bank, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time, and further including any and all subsequent amendments, additions, substitutions, renewals and refinancings of any of Borrower's Loans.

**Note.** The word "Note" means the Note dated December 3, 2012 and executed by Group Midland Hotels, LLC, a Texas limited liability company in the principal amount of $2,440,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, individually, collectively, and interchangeably, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED DECEMBER 3, 2012.

BORROWER:

GROUP MIDLAND HOTELS, LLC, A TEXAS LIMITED LIABILITY COMPANY

By: _Chetna Hira_____
    Chetna Hira, Managing Member of Group Midland
    Hotels, LLC, a Texas limited liability company

LENDER:

PACIFIC PREMIER BANK

By: _____
    Authorized Signer

LASER PRO Lending, Ver. 12.2.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2012.   All Rights Reserved.  - CA  P:\LPL\CFI\LPL\C40.FC  TR-2261  PR-75

**EXHIBIT A-1**



## U.S. Small Business Administration
# NOTE

**The guaranteed portion of this Note has been transferred to a Registered Holder for value.**

| | |
|---|---|
| SBA Loan # | 5603915006 |
| SBA Loan Name | Travelodge |
| Date | December 3, 2012 |
| Loan Amount | $2,440,000.00 |
| Interest Rate | Variable |
| Borrower | Group Midland Hotels, LLC, a Texas limited liability company |
| Operating Company | N/A |
| Lender | Pacific Premier Bank |

(Dated)  12/10/12

Pacific Premier Bank _____

We hereby certify this document to be a true and correct copy of the original Note.

(Dated)  12/10/12

Pacific Premier Bank _____

### 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of Two Million Four Hundred Forty Thousand and 00/100 Dollars ($2,440,000.00), interest on the unpaid principal balance, and all other amounts required by this Note.

### 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

### 3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 6.00% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.75%. The initial interest rate must remain in effect until the first change period begins unless reduced in accordance with SOP 50 10.

Borrower must pay principal and interest payments of $16,724.30 every month beginning two months from the month of initial disbursement on this Note; payments must be made on the first calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted monthly (the "change period").

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper ) in which SBA received the application, or any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.75% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The spread as identified in the Note may not be changed during the life of the Loan without the written agreement of the Borrower.

For variable rate loans, the interest rate adjustment period may not be changed without the written consent of the Borrower.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:

INITIAL
C·H

**EXHIBIT A-2**

**App. 014**

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date Lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

Subsidy Recoupment Fee. When in any one of the first three years from the date of initial disbursement Borrower voluntarily prepays more than 25% of the outstanding principal balance of the loan, Borrower must pay to Lender on behalf of SBA a prepayment fee for that year as follows:

a. During the first year after the date of initial disbursement, 5% of the total prepayment amount;

b. During the second year after the date of initial disbursement, 3% of the total prepayment amount; and

c. During the third year after the date of initial disbursement, 1% of the total prepayment amount.

All remaining principal and accrued interest is due and payable 25 years from date of initial disbursement.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4. **DEFAULT:**    Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.    Fails to do anything required by this Note and other Loan Documents;

B.    Defaults on any other loan with Lender;

C.    Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.    Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.    Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.    Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.    Fails to pay any taxes when due

H.    Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.    Has a receiver or liquidator appointed for any part of their business or property;

J.    Makes an assignment for the benefit of creditors;

K.    Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.    Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.    Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5. **LENDER'S RIGHTS IF THERE IS A DEFAULT:**    Without notice or demand and without giving up any of its rights, Lender may:

A.    Require immediate payment of all amounts owing under this Note;

B.    Collect all amounts owing from any Borrower or Guarantor;

C.    File suit and obtain judgment;

D.    Take possession of any Collateral; or

E.    Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6. **LENDER'S GENERAL POWERS:**    Without notice and without Borrower's consent, Lender may:

A.    Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.    Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.    Release anyone obligated to pay this Note;

D.    Compromise, release, renew, extend or substitute any of the Collateral; and

E.    Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:**    When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **SUCCESSORS AND ASSIGNS:**    Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A.    All individuals and entities signing this Note are jointly and severally liable.

B.    Borrower waives all suretyship defenses.

C.    Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.    Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.    Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.    If any part of this Note is unenforceable, all other parts remain in effect.

G.    To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. **STATE-SPECIFIC PROVISIONS:**

SBA Form 147 (06/03/02) Version 4.1

INITIAL
C.H.

Page 2/3

**EXHIBIT A-2**

**App. 015**

NONE

**11. BORROWER'S NAME(S) AND SIGNATURE(S):**
By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

Group Midland Hotels, LLC, a Texas limited liability company

By ~~Chetna Hira~~

Chetna Hira, Managing Member of Group Midland
Hotels, LLC, a Texas limited liability company

**EXHIBIT A-2**                    **App. 016**



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | 5603915006 |
|---|---|
| SBA Loan Name | Travelodge |
| Guarantor | Chetna Hira |
| Borrower | Group Midland Hotels, LLC, a Texas limited liability company |
| Lender | Pacific Premier Bank |
| Date | 12-03-2012 |
| Note Amount | $2,440,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated 12-03-2012 in the principal amount of Two Million Four Hundred Forty Thousand and 00/100 Dollars ($2,440,000.00), from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

## 4. LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor.

    A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

    B. Refrain from taking any action on the Note, the Collateral, or any guarantee;

    C. Release any Borrower or any guarantor of the Note;

    D. Compromise or settle with the Borrower or any guarantor of the Note;

    E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;

    F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

    G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

    H. Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

## 5. FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

INITIAL
C·H·

**EXHIBIT A-3**

**App. 017**

**6. RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:**

To the extent permitted by law,

A. Guarantor waives all rights to:

1) Require presentment, protest, or demand upon Borrower;

2) Redeem any Collateral before or after Lender disposes of it;

3) Have any disposition of Collateral advertised; and

4) Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1) Any default under the Note;

2) Presentment, dishonor, protest, or demand;

3) Execution of the Note;

4) Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;

5) Any change in the financial condition or business operations of Borrower or any guarantor;

6) Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and

7) The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1) Lender failed to obtain any guarantee;

2) Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;

3) Lender or others improperly valued or inspected the Collateral;

4) The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

**7. DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

**8. SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

**9. GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.

INITIAL
C·H·

**EXHIBIT A-3**

App. 018

ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

**10. STATE-SPECIFIC PROVISIONS:**
NONE

**11. GUARANTOR ACKNOWLEDGMENT OF TERMS.**
Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

**12. GUARANTOR NAME(S) AND SIGNATURE(S):**

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

X _Chetna Hira_
Chetna Hira, Individually

**EXHIBIT A-3**

**App. 019**



**Pacific Premier Bank
17901 Von Karman Ave.
Suite 1200
Irvine, CA 92614
949-864-8000**

April 13, 2015

Chetna Hira
Group Midland Hotels
4724 Byron Circle
Irving, TX 75038-631824

Loan Number: 6270015922
Property:    2500 Commerce Dr., Midland, TX
             UCC-1 All Business Assets

<u>**NOTICE OF INTENT TO FORECLOSE**</u>

Dear Group Midland Hotels:

Our records indicate that the referenced loan is in default and that the amount of principal, interest escrow, and late charges in delinquency is **$15,881.42,** as of the date of this letter.  After today, there may be additional costs for a property inspection, additional payments, or any other charges that become due.  Due to the delinquency, we require certified funds by overnight mail or delivery to a Pacific Premier Bank branch. In either case, the Collection Department, at (949) 864-8547 or toll-free at (800) 448-2265 <u>must</u> be notified on the date the default is cured or foreclosure fees may be charged to your loan due to the initiation of foreclosure.  You may also call us at the toll free number to discuss foreclosure alternative options.

If the delinquency is not cured by **April 23, 2015**, the entire outstanding balance of your loan may become immediately due and payable, and Pacific Premier Bank may pursue its rights and remedies under the loan documents, including, without limitation, proceeding with judicial or non-judicial foreclosure, obtaining the appointment of a receiver, and collecting fees for legal and trustee's expenses, and, after the legal waiting period of at least 3 months, proceeding with sale of property under the Deed of Trust securing the referenced loan.  You have the right to reinstate after this notice up to the sale date; and the right to bring a court action or assert in the foreclosure proceedings the non-existence of a default or any other defense you may have to the acceleration and foreclosure.  Reinstatement will not be permitted after sale of the property is held.

Please be advised that, pursuant to the Deed of Trust, if this is an Investment Property, <u>your license to collect the rents generated by the property is hereby revoked</u>, and demand is hereby made that you provide Pacific Premier Bank with copies of the current rent rolls and leases affecting the property and all operating statements generated for the property since the date of default.

Notwithstanding the foregoing, Pacific Premier Bank hereby reserves all of it rights and remedies under the documents evidencing or securing the loan or executed in connection therewith.  Nothing contained herein shall be deemed to modify or waive any term or provision of said documents nor alters or curtails in any way Pacific Premier Banks' abilities to pursue its remedies there under.

Sincerely,

Tammy Madsen
AVP/Loss Mitigation
949-864-8547

<u>*NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT*</u>

This is an attempt to collect a debt and any information obtained will be used for that purpose.  Unless within thirty days after receipt you dispute this debt, or a portion of it, the debt will be assumed by us to be valid.  If you notify us in writing within thirty days that you dispute this debt or a portion of it, or that you request the name and address of the original creditor if different from the current creditor, we will obtain verification and provide you with a copy of the information.

You may qualify for homeownership counseling through the department of Housing and Urban Development (HUD).  Please contact HUD at (800) 569-4287 which will provide a list of HUD-approved nonprofit counseling organizations that serve your area, or via the web at <u>www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm</u>

**EXHIBIT A-4**

**App. 020**



**Pacific Premier Bank**
**17901 Von Karman Ave.**
**Suite 1200**
**Irvine, CA 92614**
**949-864-8000**

April 13, 2015

Group Midland Hotels
2500 Commerce Dr.
Midland, TX 79703-755100

Loan Number: 6270015922
Property: 2500 Commerce Dr., Midland, TX
UCC-1 All Business Assets

**NOTICE OF INTENT TO FORECLOSE**

Dear Group Midland Hotels:

Our records indicate that the referenced loan is in default and that the amount of principal, interest escrow, and late charges in delinquency is **$15,881.42,** as of the date of this letter. After today, there may be additional costs for a property inspection, additional payments, or any other charges that become due. Due to the delinquency, we require certified funds by overnight mail or delivery to a Pacific Premier Bank branch. In either case, the Collection Department, at (949) 864-8547 or toll-free at (800) 448-2265 must be notified on the date the default is cured or foreclosure fees may be charged to your loan due to the initiation of foreclosure. You may also call us at the toll free number to discuss foreclosure alternative options.

If the delinquency is not cured by **April 23, 2015**, the entire outstanding balance of your loan may become immediately due and payable, and Pacific Premier Bank may pursue its rights and remedies under the loan documents, including, without limitation, proceeding with judicial or non-judicial foreclosure, obtaining the appointment of a receiver, and collecting fees for legal and trustee's expenses, and, after the legal waiting period of at least 3 months, proceeding with sale of property under the Deed of Trust securing the referenced loan. You have the right to reinstate after this notice up to the sale date; and the right to bring a court action or assert in the foreclosure proceedings the non-existence of a default or any other defense you may have to the acceleration and foreclosure. Reinstatement will not be permitted after sale of the property is held.

Please be advised that, pursuant to the Deed of Trust, if this is an Investment Property, your license to collect the rents generated by the property is hereby revoked, and demand is hereby made that you provide Pacific Premier Bank with copies of the current rent rolls and leases affecting the property and all operating statements generated for the property since the date of default.

Notwithstanding the foregoing, Pacific Premier Bank hereby reserves all of it rights and remedies under the documents evidencing or securing the loan or executed in connection therewith. Nothing contained herein shall be deemed to modify or waive any term or provision of said documents nor alters or curtails in any way Pacific Premier Banks' abilities to pursue its remedies there under.

Sincerely,

Tammy Madsen
AVP/Loss Mitigation
949-864-8547

_NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT_

This is an attempt to collect a debt and any information obtained will be used for that purpose. Unless within thirty days after receipt you dispute this debt, or a portion of it, the debt will be assumed by us to be valid. If you notify us in writing within thirty days that you dispute this debt or a portion of it, or that you request the name and address of the original creditor if different from the current creditor, we will obtain verification and provide you with a copy of the information.

You may qualify for homeownership counseling through the department of Housing and Urban Development (HUD). Please contact HUD at (800) 569-4287 which will provide a list of HUD-approved nonprofit counseling organizations that serve your area, or via the web at www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm

**EXHIBIT A-4**

Pacific Premier Bank
17901 Von Karman Ave.
Suite 1200
Irvine, CA 92614
949-864-8000

January 20, 2016

Chetna Hira
Group Midland Hotels
4724 Byron Circle
Irving, TX 75038-631824

Loan Number: 6270015922
Property:     2500 Commerce Dr., Midland, TX
              UCC-1 All Business Assets

### NOTICE OF INTENT TO FORECLOSE

Dear Group Midland Hotels:

Our records indicate that the referenced loan is in default and that the amount of principal, interest escrow, and late charges in delinquency is **$16,255.81,** as of the date of this letter.  After today, there may be additional costs for a property inspection, additional payments, or any other charges that become due.  Due to the delinquency, we require certified funds by overnight mail or delivery to a Pacific Premier Bank branch.  In either case, the Collection Department, at (949) 864-8547 or toll-free at (800) 448-2265 <u>must</u> be notified on the date the default is cured or foreclosure fees may be charged to your loan due to the initiation of foreclosure.  You may also call us at the toll free number to discuss foreclosure alternative options.

If the delinquency is not cured by **January 30, 2016**, the entire outstanding balance of your loan may become immediately due and payable, and Pacific Premier Bank may pursue its rights and remedies under the loan documents, including, without limitation, proceeding with judicial or non-judicial foreclosure, obtaining the appointment of a receiver, and collecting fees for legal and trustee's expenses, and, after the legal waiting period of at least 3 months, proceeding with sale of property under the Deed of Trust securing the referenced loan.  You have the right to reinstate after this notice up to the sale date; and the right to bring a court action or assert in the foreclosure proceedings the non-existence of a default or any other defense you may have to the acceleration and foreclosure.  Reinstatement will not be permitted after sale of the property is held.

Please be advised that, pursuant to the Deed of Trust, if this is an Investment Property, <u>your license to collect the rents generated by the property is hereby revoked</u>, and demand is hereby made that you provide Pacific Premier Bank with copies of the current rent rolls and leases affecting the property and all operating statements generated for the property since the date of default.

Notwithstanding the foregoing, Pacific Premier Bank hereby reserves all of it rights and remedies under the documents evidencing or securing the loan or executed in connection therewith.  Nothing contained herein shall be deemed to modify or waive any term or provision of said documents nor alters or curtails in any way Pacific Premier Banks' abilities to pursue its remedies there under.

Sincerely,

Tammy Madsen
AVP/Loss Mitigation
949-864-8547

### NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT

This is an attempt to collect a debt and any information obtained will be used for that purpose.  Unless within thirty days after receipt you dispute this debt, or a portion of it, the debt will be assumed by us to be valid.  If you notify us in writing within thirty days that you dispute this debt or a portion of it, or that you request the name and address of the original creditor if different from the current creditor, we will obtain verification and provide you with a copy of the information.

You may qualify for homeownership counseling through the department of Housing and Urban Development (HUD).  Please contact HUD at (800) 569-4287 which will provide a list of HUD-approved nonprofit counseling organizations that serve your area, or via the web at www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm

**EXHIBIT A-4**

| Servicemembers Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Exp 12/31/17 |
|---|---|---|

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders to: Pacific Premier Bank- 17901 Von Karman Suite 1200, Irvine CA. 92614.  Tammy Madsen – 949-864-8547
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate.  Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service.  Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
  - "Military OneSource" is the U.S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.





**Pacific Premier Bank**
**17901 Von Karman Ave.**
**Suite 1200**
**Irvine, CA 92614**
**949-864-8000**

March 17, 2016

Chetna Hira
Group Midland Hotels
4724 Byron Circle
Irving, TX 75038-631824

Loan Number: 6270015922
Property:     2500 Commerce Dr., Midland, TX
              UCC-1 All Business Assets

<u>NOTICE OF INTENT TO FORECLOSE</u>

Dear Group Midland Hotels:

Our records indicate that the referenced loan is in default and that the amount of principal, interest escrow, and late charges in delinquency is <u>$17,898.47,</u> as of the date of this letter.  After today, there may be additional costs for a property inspection, additional payments, or any other charges that become due.  Due to the delinquency, we require certified funds by overnight mail or delivery to a Pacific Premier Bank branch.  In either case, the Collection Department, at (949) 864-8547 or toll-free at (800) 448-2265 <u>must</u> be notified on the date the default is cured or foreclosure fees may be charged to your loan due to the initiation of foreclosure.  You may also call us at the toll free number to discuss foreclosure alternative options.

If the delinquency is not cured by <u>March 27, 2016,</u> the entire outstanding balance of your loan may become immediately due and payable, and Pacific Premier Bank may pursue its rights and remedies under the loan documents, including, without limitation, proceeding with judicial or non-judicial foreclosure, obtaining the appointment of a receiver, and collecting fees for legal and trustee's expenses, and, after the legal waiting period of at least 3 months, proceeding with sale of property under the Deed of Trust securing the referenced loan.  You have the right to reinstate after this notice up to the sale date; and the right to bring a court action or assert in the foreclosure proceedings the non-existence of a default or any other defense you may have to the acceleration and foreclosure.  Reinstatement will not be permitted after sale of the property is held.

Please be advised that, pursuant to the Deed of Trust, if this is an Investment Property, <u>your license to collect the rents generated by the property is hereby revoked,</u> and demand is hereby made that you provide Pacific Premier Bank with copies of the current rent rolls and leases affecting the property and all operating statements generated for the property since the date of default.

Notwithstanding the foregoing, Pacific Premier Bank hereby reserves all of it rights and remedies under the documents evidencing or securing the loan or executed in connection therewith.  Nothing contained herein shall be deemed to modify or waive any term or provision of said documents nor alters or curtails in any way Pacific Premier Banks' abilities to pursue its remedies there under.

Sincerely,

Tammy Madsen
AVP/Loss Mitigation
949-864-8547

*NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT*

This is an attempt to collect a debt and any information obtained will be used for that purpose.  Unless within thirty days after receipt you dispute this debt, or a portion of it, the debt will be assumed by us to be valid.  If you notify us in writing within thirty days that you dispute this debt or a portion of it, or that you request the name and address of the original creditor if different from the current creditor, we will obtain verification and provide you with a copy of the information.

You may qualify for homeownership counseling through the department of Housing and Urban Development (HUD).  Please contact HUD at (800) 569-4287 which will provide a list of HUD-approved nonprofit counseling organizations that serve your area, or via the web at www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm

| Servicemembers Civil Relief Act Notice Disclosure | U.S. Department of Housing and Urban Development Office of Housing | OMB Approval 2502-0584 Exp 12/31/17 |
|---|---|---|

## Legal Rights and Protections Under the SCRA

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC App. §§ 501-597b) (SCRA).

## Who May Be Entitled to Legal Protections Under the SCRA?

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard).
- Reserve and National Guard personnel who have been activated and are on Federal active duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration.
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

## What Legal Protections Are Servicemembers Entitled To Under the SCRA?

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above 6 % during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within one year after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a valid court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

## How Does A Servicemember or Dependent Request Relief Under the SCRA?

- In order to request relief under the SCRA from loans with interest rates above 6% a servicemember or spouse must provide a written request to the lender, together with a copy of the servicemember's military orders to: Pacific Premier Bank- 17901 Von Karman Suite 1200, Irvine CA. 92614.   Tammy Madsen – 949-864-8547
- There is no requirement under the SCRA, however, for a servicemember to provide a written notice or a copy of a servicemember's military orders to the lender in connection with a foreclosure or other debt enforcement action against real estate.  Under these circumstances, lenders should inquire about the military status of a person by searching the Department of Defense's Defense Manpower Data Center's website, contacting the servicemember, and examining their files for indicia of military service.  Although there is no requirement for servicemembers to alert the lender of their military status in these situations, it still is a good idea for the servicemember to do so.

## How Does a Servicemember or Dependent Obtain Information About the SCRA?

- Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. A military legal assistance office locator for all branches of the Armed Forces is available at http://legalassistance.law.af.mil/content/locator.php
  - "Military OneSource" is the U. S. Department of Defense's information resource. If you are listed as entitled to legal protections under the SCRA (see above), please go to www.militaryonesource.mil/legal or call 1-800-342-9647 (toll free from the United States) to find out more information. Dialing instructions for areas outside the United States are provided on the website.

Find this tool and more on Banker Tools on BankersOnline.com
http://www.bankersonline.com/tools/tools.html

**EXHIBIT A-4**

form **HUD-92070**
(12/2014 amended BOL 01/2015)

**App. 025**



# PACIFIC PREMIER
### BANK

May 16, 2016

Group Midland Hotels, LLC
c/o Chetna Hira
2500 Commerce Drive
Midland, TX 79703

RE:  SBA Loan #6270015922

Dear Chetna Hira:

We need the following financial documents immediately. We previously requested these documents in January 2016.

**Group Midland Hotels LLC to Provide:**
- 2013 - 2015 Business Tax Returns with all Schedule K-1s
- 2015 FYE or Interim financial statement
- 2016 projected statement
- Proposed payment Plan

**Chetna Hira  to Provide:**
- 2015 Personal Financial Statement to be filled out and signed (form attached).
- 2013, 2014, & 2015 Personal Tax Returns with all Schedule K-1s .

Under the Business Loan Agreement these documents are to be sent to PPB every year. If you have any questions, contact me at (949) 526-7295.

Best regards,

Kevin McArthur
Credit Analyst
Email:kmcarthur@ppbi.com



June 16, 2016

Group Midland Hotels LLC dba Travelodge
 c/o Miten A. & Dipaliben M Patel
2500 Commerce Drive
Midland, TX 79703

RE:  SBA Annual Review #6270015922                                    **2nd Request**

Dear Chetna Hira:

Thank you for banking with Pacific Premier Bank.  My name is Steve Park and I am the Portfolio Manager that will be working on your SBA Annual Review.  Throughout this process, I will be in touch with you to help facilitate the request. This is a follow up Letter to remind you to provide the previously requested financial information by Pacific Premier Bank on May 16, 2016.

Based on the information we have been provided, additional documentation is required.  Attached is a preliminary checklist of the items needed.  Please provide the items listed on the following page, and take into consideration that the earlier we receive the additional documentation, the earlier our final analysis can begin.  **Prompt delivery of these items will enable us to provide you with the best possible service and help ensure that your SBA Loan will be reviewed in a timely manner.**

If you have any questions regarding this process please feel free to contact me for assistance.

Best regards,

*Steve Park*

Steve Park
VP / Portfolio Manager
Office:   (949) 864-8034
Fax:      (714) 433-3081
Email:    spark@ppbi.com

**Checklist of Remaining Items Needed**

**Group Midland Hotels, LLC – SBA Loan Review**

**Group Midland Hotels LLC to Provide:**

1. ~~2015 Business Tax Returns with all Schedule K-1s or Extension.~~
2. ~~2014 Business Tax Returns with all Schedule K-1s or Extension.~~
3. 2016 Interim Business Financial Statements.
4. Business Debt Schedule (form attached).

**Chetna Hira to Provide:**

1. ~~2016 Personal Financial Statement to be filled out and signed (form attached).~~
2. ~~2015 Personal Tax Returns with all Schedule K-1s or Extension.~~
3. ~~2014 Personal Tax Returns with all Schedule K-1s.~~
4. ~~2013 Personal Tax Returns with all Schedule K-1s.~~



**Pacific Premier Bank**
**17901 Von Karman Ave.**
**Suite 1200**
**Irvine, CA 92614**
**949-864-8000**

August 12, 2016

Chetna Hira
Group Midland Hotels
4724 Byron Circle
Irving, TX 75038-631824

Loan Number:  6270015922
Property:      2500 Commerce Dr., Midland, TX
               UCC-1 All Business Assets

<u>**NOTICE OF INTENT TO FORECLOSE**</u>

Dear Group Midland Hotels:

Our records indicate that the referenced loan is in default and that the amount of principal, interest escrow, and late charges in delinquency is <u>**$18,011.03,**</u> as of the date of this letter.  After today, there may be additional costs for a property inspection, additional payments, or any other charges that become due.  Due to the delinquency, we require certified funds by overnight mail or delivery to a Pacific Premier Bank branch. In either case, the Collection Department, at (949) 864-8547 or toll-free at (800) 448-2265 <u>must</u> be notified on the date the default is cured or foreclosure fees may be charged to your loan due to the initiation of foreclosure.  You may also call us at the toll free number to discuss foreclosure alternative options.

If the delinquency is not cured by <u>**August 22, 2016**</u>, the entire outstanding balance of your loan may become immediately due and payable, and Pacific Premier Bank may pursue its rights and remedies under the loan documents, including, without limitation, proceeding with judicial or non-judicial foreclosure, obtaining the appointment of a receiver, and collecting fees for legal and trustee's expenses, and, after the legal waiting period of at least 3 months, proceeding with sale of property under the Deed of Trust securing the referenced loan.  You have the right to reinstate after this notice up to the sale date; and the right to bring a court action or assert in the foreclosure proceedings the non-existence of a default or any other defense you may have to the acceleration and foreclosure.  Reinstatement will not be permitted after sale of the property is held.

Please be advised that, pursuant to the Deed of Trust, if this is an Investment Property, <u>your license to collect the rents generated by the property is hereby revoked</u>, and demand is hereby made that you provide Pacific Premier Bank with copies of the current rent rolls and leases affecting the property and all operating statements generated for the property since the date of default.

Notwithstanding the foregoing, Pacific Premier Bank hereby reserves all of it rights and remedies under the documents evidencing or securing the loan or executed in connection therewith.  Nothing contained herein shall be deemed to modify or waive any term or provision of said documents nor alters or curtails in any way Pacific Premier Banks' abilities to pursue its remedies there under.

Sincerely,

Tammy Madsen
AVP/Loss Mitigation
949-864-8547

<u>*NOTICE UNDER FAIR DEBT COLLECTION PRACTICES ACT*</u>

This is an attempt to collect a debt and any information obtained will be used for that purpose.  Unless within thirty days after receipt you dispute this debt, or a portion of it, the debt will be assumed by us to be valid.  If you notify us in writing within thirty days that you dispute this debt or a portion of it, or that you request the name and address of the original creditor if different from the current creditor, we will obtain verification and provide you with a copy of the information.

You may qualify for homeownership counseling through the department of Housing and Urban Development (HUD).  Please contact HUD at (800) 569-4287 which will provide a list of HUD-approved nonprofit counseling organizations that serve your area, or via the web at <u>www.hud.gov/offices/hsg/sfh/hcc/hccprof14.cfm</u>

**EXHIBIT A-4**

**App. 029**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PACIFIC PREMIER BANK,               §
    *Plaintiff*,                       §
                                   §
vs.                                 §   CIVIL ACTION NO. 3:17-CV-00312-B
                                   §
GROUP MIDLAND HOTELS, LLC, and      §
CHETNA HIRA,                        §
    *Defendants*.                     §

## AFFIDAVIT OF ROBERT P. LATHAM

STATE OF TEXAS        §
                 §
DALLAS COUNTY         §

      Before me, the undersigned notary, on this day personally appeared Robert P. Latham, a person whose identity is known to me. After I administered an oath to him, upon his oath he said:

      1.     My name is Robert P. Latham. I am capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

      2.     I am a partner at the law firm of Jackson Walker L.L.P. ("Jackson Walker"). I was licensed to practice law in the State of Texas in 1983 and have actively practiced law on a full time basis since then, principally in Dallas County. My practice has involved bankruptcy, creditors' rights, and other civil litigation in state and federal courts.

      3.     Attached hereto as Exhibit B-1 is a true and correct copy of Defendant Chetna Hira's Responses to Plaintiff's First Requests of Interrogatories, Request for Production of Documents, and Request for Admissions, dated May 5, 2017. The foregoing document is a true, correct, and authentic copy of discovery responses served by Defendant Chetna Hira in this lawsuit.

**AFFIDAVIT OF ROBERT P. LATHAM**

**EXHIBIT B**

4.     I am familiar with the guidelines established by the State Bar of Texas concerning the factors to be considered in determining a reasonable fee for professional legal services.  In addition, I am familiar with the fees customarily charged for legal counsel and representation of the nature that has been performed in these proceedings.

5.     This affidavit contains information relating to Pacific Premier Bank's ("Plaintiff") reasonable attorneys' fees and costs incurred in prosecution of the above-referenced case. Accordingly, I hereby submit this affidavit, taking into account the following factors:

    (a)     the novelty and difficulty of the question involved and the skill requisite to perform the legal services properly;

    (b)     the fee customarily charged in the locality for similar legal services;

    (c)     the total dollar amount involved and the results obtained;

    (d)     time limitations imposed by the client or the circumstances;

    (e)     the experience, reputation, and ability of the firm and the attorney handling the matter.

*See* Tex. Civ. Prac. & Rem. Code § 26.003(a); Rule 1.04 (b), Texas Disciplinary Rules of Professional Conduct.

6.     My firm was retained by Pacific Premier Bank, N.A. ("Plaintiff") to assist in its prosecution of the above-referenced cause.  I have personally performed or have supervised the performance of legal services for and on behalf of the Plaintiff in this action.  Specifically, I, along with Jackson Walker associate Lindsey Marsh, performed the work in this lawsuit on behalf of Plaintiff. Plaintiff has incurred attorneys' fees in the prosecution of this suit that were reasonable and necessary.  Plaintiff has also incurred attorneys' fees and expenses relating to the enforcement of the Note in the GMH Bankruptcy proceeding *In re Group Midland Hotels, LLC,*

Case No. 17-70021, in the United States Bankruptcy Court for the Western District of Texas, Midland Division, Chapter 11 (the "GMH Bankruptcy"). Hira is obligated to pay these amounts because the fees and expenses all relate to the collection of GMH's indebtedness to Plaintiff.

7.      The reasonable attorneys' fees incurred by Plaintiff during the period November 1, 2016 to May 18, 2017 in connection with Plaintiff's collection efforts and to investigate and prosecute this case through the preparation of this motion for summary judgment are $53,985.00. The reasonable costs and expenses incurred by Plaintiff as of May 18, 2017 in connection with Plaintiff's collection efforts and to investigate and prosecute this case through the preparation of this motion for summary judgment are $1,296.53. Therefore, the total attorneys' fees, reasonable costs and expenses incurred by Plaintiff as of May 18, 2017 in connection with Plaintiff's collection efforts and to investigate and prosecute this case through the preparation of this motion for summary judgment are $55,281.53. In my opinion, these attorneys' fees, costs, and expenses are reasonable and necessary for the work Jackson Walker performed in this matter through May 18, 2017.

8.      Based upon consideration of all the factors stated above, reasonable attorneys' fees and costs incurred and paid by Plaintiff for prosecution of this action to date are **$55,281.53**. Attached hereto as Exhibit B-2 are redacted itemized statements of legal services rendered by Jackson Walker on behalf of Plaintiff. These records are kept by Jackson Walker in the regular course of business, and it was in the regular course of Jackson Walker's business for an employee with personal knowledge of the act, event, or condition recorded, to make the records or to transmit information thereof to be included in such records, and the records were made at or near the time of the act, event, or condition recorded or reasonably soon thereafter.

9.     Plaintiff seeks from Hira a total amount of $53,985.00 in fees and $1,296.53 in expenses for a sum total of **$55,281.53**.

10.    Additionally, it is my opinion that the reasonable value of attorneys' fees, costs, and expenses reasonably and necessarily incurred by Plaintiff should Jackson Walker be required to represent Plaintiff on appeal to the United States Court of Appeals for the Fifth Circuit is $25,000.00.

11.    Further, it is my opinion that the reasonable value of attorneys' fees, costs, and expenses reasonably and necessarily incurred by Plaintiff should Jackson Walker be required to represent Plaintiff on appeal to the United States Supreme Court is $30,000.00.

FURTHER AFFIANT SAYETH NOT.

_____
Robert P. Latham

SUBSCRIBED and SWORN TO before me on this the 19th day of ___May___, 2017 to certify my hand and official seal.

_____
Notary Public Signature

DALIA A. VICENCIO
Notary Public, State of Texas
Comm. Expires 08-01-2020
Notary ID 4634792

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **PACIFIC PREMIER BANK** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:17-CV-** |
| | § | **00312-B** |
| | § | |
| **GROUP MIDLAND HOTELS, LLC AND** | § | |
| **CHETNA HIRA** | § | |
| **Defendants.** | § | |

**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF
INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS, AND
REQUEST FOR ADMISSIONS**

**INTERROGATORIES**

<u>INTERROGATORY NO. 1</u>:  Identify all Persons with whom You consulted or who assisted You in responding to these interrogatories.  As to each named Person, identify the home and business address, telephone, the nature of each Person's relationship to You and the particular interrogatory(ies) about which You consulted or received assistance from that person.

<u>RESPONSE</u>:  Sunil Patel, 2220 Pistachio Dr., Irving, Texas 75063.  972-467-6756.

<u>INTERROGATORY NO. 2</u>:  Please state each legal and factual basis for any contention that You do not owe the amounts which remain due and owing under the Note and/or Guaranty, including the balance of the principal, accrued interest, and all lawful fees and expenses, including Plaintiff's attorneys' fees.

<u>RESPONSE</u>:    Defendant is entitled to any credits and offsets as determined in the contemporaneous bankruptcy proceeding involving the entity.  The claim has not yet been approved pursuant to a plan of reorganization; therefore, the amount allegedly due from Defendant is not yet known.

<u>INTERROGATORY NO. 3</u>:  Please identify each defense that You are asserting or that You will assert concerning Plaintiff's claims in this lawsuit, and state the factual basis for each defense.

<u>RESPONSE</u>:  Defendant is entitled to any credits and offsets as determined in the contemporaneous bankruptcy proceeding involving the entity.  The claim has not yet been

approved pursuant to a plan of reorganization; therefore, the amount allegedly due from Defendant is not yet known.

INTERROGATORY NO. 4:  Please describe each communication You have had with Plaintiff concerning the Note and/or Guaranty.  You are requested to identify the individuals involved, the date, the substance of that communication, and whether any documents were created relating to that communication.

RESPONSE:   Ms. Hira does not speak English and therefore had no communications with Plaintiff.

INTERROGATORY NO. 5:  Please identify any and all payments You contend have been made under the Note and/or Guaranty.  You are requested to identify the dates and amounts of all such payments, as well as the type of payments made, whether by check (including the check numbers), cash, or otherwise.

RESPONSE:   Payments were made up until 2016.  In the bankruptcy, payments of $5,000 per month are currently being paid.  The exact payment history is within the knowledge of Plaintiff and is now within the purview of the bankruptcy court.

INTERROGATORY NO. 6:  Please describe any and all reasons You have not made full payments on the Note and/or Guaranty as required.

RESPONSE:   The amount of the claim is not yet known.

INTERROGATORY NO. 7:  If You denied any of Plaintiff's request for Admissions, state the reason for such denial.

RESPONSE:   Objection:  This interrogatory is overly broad and vexatious.  Further, to the extent that the 25 interrogatory limitation applies, this  request arguably exceeds same or would cause Plaintiff to exceed same as each denied request for admission becomes its own interrogatory or discrete subpart.

INTERROGATORY NO. 8:  Please identify the amount of the indebtedness owed on the Note that You acknowledge to be indebted to Plaintiff.

RESPONSE:   Defendant believes the amount owed is approximately $2,295,647.96 as of March 31, 2017.

INTERROGATORY NO. 9:  If Your answer to Interrogatory 8 was "zero" or less than the amount Plaintiff alleged in the Complaint, provide the factual basis for Your contention that You owe less than the full amount due on the note, dates and amounts of payment, including reasons for withholding full payment.

RESPONSE:   The payment history and application of interest is within the exclusive knowledge of Plaintiff.

INTERROGATORY NO. 10:        Please identify the specific provision(s) of the Note upon which You rely to justify Your refusal to pay amounts due under the Note.

RESPONSE:   Pursuant to the Note, guarantor is only obligated to pay whatever the obligor/maker is obligated to pay.  As the debt is currently in bankruptcy, that Court has the exclusive jurisdiction to liquidate the claim.

INTERROGATORY NO. 11:        Please identify the specific provision(s) of the Guaranty upon which You rely to justify Your refusal to pay amounts due under the Guaranty.

RESPONSE:   Please see response 10 above.

INTERROGATORY NO. 12:        Identify all bank accounts, mutual funds, investment funds, and/or other financial accounts in which You have or have had any interest at any time since December 1, 2012.  For each account, provide the financial institution's name and address, the name on the account, the account number, and the balance of the account.

RESPONSE:   Objection:  This request is not reasonably calculated to lead to the discovery of admissible evidence.  This request is akin to a postjudgment collection effort.

INTERROGATORY NO. 13:        State whether You have transferred money or its equivalent in the amount of over $1,000.00 to a Trustee, nominee or any other person or entity for Your Benefit or for the benefit of any other person or entity during the past year and, if so, for each please state:
   a.  The value of the transfer;
   b.  The name and address of the person or entity to whom the money or its equivalent was transferred; and
   c.  The reason for such transfer.

RESPONSE:       Objection:  This request is not reasonably calculated to lead to the discovery of admissible evidence.  This request is akin to a postjudgment collection effort.  Further, fraudulent transfer is not a cause of action in this case.

INTERROGATORY NO. 14:          State whether any person or entity is holding any property for Your benefit or in your behalf, either as nominee Trustee or in any other capacity and, if so, for each please state:
  a.  Description of the property so held;
  b.  Value of the property; and
  c.  The name and address of the person or entity holding such property.

    RESPONSE:   Objection:  This request is not reasonably calculated to lead to the discovery of admissible evidence.  This request is akin to a postjudgment collection effort.

INTERROGATORY NO. 15:          State whether or not You transferred to a Trustee, nominee or any other person or entity for Your benefit or for the benefit of any other person or entity, any property of any kind, regardless of where it is situated, during the past year and, if so, for each please state:
  d.  A description of the property;
  e.  The value of the property;
  f.  The name and address of the person or entity to whom the property was transferred; and
  g.  The reason for such transfer.

    RESPONSE:      Objection:  This request is not reasonably calculated to lead to the discovery of admissible evidence.  This request is akin to a postjudgment collection effort. Further, fraudulent transfer is not a cause of action in this case.

## DEFENDANT CHETNA HIRA'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1:      All correspondence or communication between Hira and Plaintiff concerning the Note.

    RESPONSE:   Respondent will produce financial statements which were transferred through the attorneys in support of settlement efforts.

REQUEST FOR PRODUCTION NO. 2:      All correspondence or communication between Hira and Plaintiff concerning the Guaranty.

    RESPONSE:   Respondent will produce financial statements which were transferred through the attorneys in support of settlement efforts.

REQUEST FOR PRODUCTION NO. 3:      All non-privileged correspondence or communications with Hira and any person concerning the Note and/or Guaranty and/or payments under the Note and/or Guaranty.

**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                                    **App. 037**

RESPONSE:  None other than financial statements and settlement efforts.  Respondent will produce.


REQUEST FOR PRODUCTION NO. 4:  All Documents concerning any communication regarding whether You should make payments on the Note and/or Guaranty to Plaintiff.

RESPONSE:  Objection:  This request is ambiguous and does not describe with reasonable particularity the documents sought.  No documents are being withheld subject to this objection.


REQUEST FOR PRODUCTION NO. 5:  All correspondence concerning any payments You made on the Note and/or Guaranty.

RESPONSE:  None.


REQUEST FOR PRODUCTION NO. 6:  All Documents relating to, supporting or evidencing any defense to Your obligations under the Note.

RESPONSE:  Objection:  This request does not describe the documents sought with reasonable particularity.  It further violates the attorney core work product privilege.  No documents are being withheld subject thereto.


REQUEST FOR PRODUCTION NO. 7:  All Documents relating to, supporting or evidencing any defense to Your obligations under the Guaranty.

RESPONSE:  Objection:  This request does not describe the documents sought with reasonable particularity.  It further violates the attorney core work product privilege.  No documents are being withheld subject thereto.


REQUEST FOR PRODUCTION NO. 8:  All Documents You relied upon or reviewed in responding to Plaintiff's First Set of Interrogatories.

RESPONSE:  None other than the financial statements to discern the amount allegedly owed.


REQUEST FOR PRODUCTION NO. 9:  All Documents You relied upon or reviewed in responding to Plaintiff's First Set of Requests for Admissions.


**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                    **App. 038**

RESPONSE:   Objection:  This request is overly broad and does not describe the documents sought with reasonable particularity.  No documents are being withheld subject to the objections.

REQUEST FOR PRODUCTION NO. 10:    All Documents concerning any communications between Hira and any person or entity, relating to Plaintiff and the Note and/or Guaranty.

RESPONSE:   Respondent will produce.

REQUEST FOR PRODUCTION NO. 11:    All agreements or contracts between Hira and Plaintiff.

RESPONSE:   Please see the guaranty.

REQUEST FOR PRODUCTION NO. 12:    All drafts of all agreements or contracts between Hira and Plaintiff.

RESPONSE:   None known.

REQUEST FOR PRODUCTION NO. 13:    All documents supporting any contention that You do not owe any part of the amounts due under the Loan Documents.

RESPONSE:   Respondent will produce.

REQUEST FOR PRODUCTION NO. 14:    All documents which You intend to rely upon, or introduce as evidence, at trial in this matter.

RESPONSE:   Objection:  This request invades the attorney core work product privilege.  No documents are being withheld subject to this objection.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

REQUEST FOR ADMISSION NO. 1:      Admit that Exhibit A-1 attached to the Complaint is a true and correct copy of the Loan Agreement.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 2:      Admit that You executed Exhibit A-1 to the Complaint.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 3:      Admit that Exhibit A-2 attached to the Complaint is a true and correct copy of the Note.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 4:      Admit that You executed Exhibit A-2 to the Complaint.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 5:      Admit that Exhibit A-3 attached to the Complaint is a true and correct copy of the Deed of Trust.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 6:      Admit that You executed Exhibit A-3 to the Complaint.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 7:      Admit that Exhibit A-4 attached to the Complaint is a true and correct copy of the Security Agreement.

      RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 8:      Admit that You executed Exhibit A-4 to the Complaint.

**EXHIBIT B-1**                    **App. 040**

RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 9:        Admit that Exhibit A-5 attached to the Complaint is
a true and correct copy of the Guaranty.

        RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 10:        Admit that You executed Exhibit A-5 to the
Complaint.

        RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 11:        Admit that You received a demand for payment on
the Loan Agreement from Plaintiff.

        RESPONSE:   Deny.  Respondent is not an obligor under the Loan Agreemen and
therefore lacks capacity to receive such demand individually.  Respondent admits to receiving
demand to the entity.


REQUEST FOR ADMISSION NO. 12:        Admit that You received a demand for payment on
the Guaranty from Plaintiff.

        RESPONSE:   Admit.


REQUEST FOR ADMISSION NO. 13:        Admit that You received a demand for payment on
the Note from Plaintiff.

        RESPONSE:   Deny.  Respondent is not an obligor under the Note and therefore lacks
capacity to receive such demand individually.  Respondent admits to receiving notice to the
entity.


REQUEST FOR ADMISSION NO. 14:        Admit that Exhibit A-6 to the Complaint are true
and correct copies of notices of default sent to You by Plaintiff.

RESPONSE:        Admit.


REQUEST FOR ADMISSION NO. 15:        Admit that You received a written demand for
payment from Plaintiff.

**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES,
REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                                              **App. 041**

RESPONSE:  Deny.  Respondent is not an obligor under the Note and therefore lacks capacity to receive such demand individually.  Respondent admits to receiving demand to the entity.

REQUEST FOR ADMISSION NO. 16:      Admit that You received a Notice of Intent to Foreclose from Plaintiff.

RESPONSE:  Deny.  The notice was sent to the hotel.  Respondent received notice to the entity from the hotel.

REQUEST FOR ADMISSION NO. 17:      Admit that Exhibit A-6 to the Complaint includes true and correct copies of Notices of Intent to Foreclose from Plaintiff.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 18:      Admit that You guaranteed to preserve the Collateral, as defined in the Guaranty.

RESPONSE:  Deny as to respondent being an obligor to preserve collateral.  The entity is the obligor thereto.

REQUEST FOR ADMISSION NO. 19:      Admit that You are required to provide financial statements as Plaintiff requires, pursuant to the Guaranty.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 20:      Admit that you have failed to provide financial statements that Plaintiff has requested from You.

RESPONSE:  Deny.

REQUEST FOR ADMISSION NO. 21:      Admit that You have failed to pay the amounts due to Plaintiff under the Note.

RESPONSE:  Deny.

REQUEST FOR ADMISSION NO. 22:      Admit that GMH has failed to pay the amounts due to Plaintiff under the Note.

**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                                        **App. 042**

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 23:        Admit that You have failed to pay the amounts due to Plaintiff under the Loan Agreement.

RESPONSE:  Deny as to respondent being an obligor thereunder.  Otherwise admit.

REQUEST FOR ADMISSION NO. 24:        Admit that GMH has failed to pay the amounts due to Plaintiff under the Loan Agreement.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 25:        Admit that You have failed to pay the amounts due to Plaintiff under the Guaranty.

RESPONSE:  Deny.

REQUEST FOR ADMISSION NO. 26:        Admit that there is an outstanding balance due on the Note.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 27:        Admit that there is an outstanding balance due on the Loan Agreement.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 28:        Admit that the full amount of the principal on the Note has not been paid by You.

RESPONSE:  Deny as to respondent being an obligor thereunder.  Otherwise admit.

REQUEST FOR ADMISSION NO. 29:        Admit that Plaintiff is the current lender under the Loan Agreement.

RESPONSE:   Respondent cannot admit nor deny as respondent cannot know of the Note was transferred without her knowledge.  This is an issue exclusively within Plaintiff's knowledge.

REQUEST FOR ADMISSION NO. 30:      Admit that Plaintiff is the current payee under the Note.

RESPONSE:   Respondent cannot admit nor deny as respondent cannot know of the Note was transferred without her knowledge.  This is an issue exclusively within Plaintiff's knowledge.

REQUEST FOR ADMISSION NO. 31:      Admit that Plaintiff is the current holder of the Note.

RESPONSE:   Respondent cannot admit nor deny as respondent cannot know of the Note was transferred without her knowledge.  This is an issue exclusively within Plaintiff's knowledge.

REQUEST FOR ADMISSION NO. 32:      Admit that pursuant to the terms of the Guaranty, You promised full and prompt payment and performance of all obligations owed by GMH to Plaintiff arising out of the Note.

RESPONSE:  Deny.

REQUEST FOR ADMISSION NO. 33:      Admit that under the Guaranty, upon GMH's default, You are obligated to pay all of the unpaid principal balance.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 34:      Admit that under the Guaranty, upon GMH's default, You are obligated to pay all of the interest accrued.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 35:      Admit that under the Guaranty, You are obligated to pay all of the enforcement costs, including attorneys' fees and court costs incurred by Plaintiff in enforcing the terms of the Guaranty.

RESPONSE:  Admit.

REQUEST FOR ADMISSION NO. 36:      Admit that the Guaranty remains in effect until the Note is paid in full.

RESPONSE:   Objection.  This is a pure question of law.  Respondent is not otherwise qualified to render a legal opinion.

**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**

**EXHIBIT B-1**                                              **App. 044**

REQUEST FOR ADMISSION NO. 37:        Admit that You are in default under the Note.

     RESPONSE:  Deny.


REQUEST FOR ADMISSION NO. 38:        Admit that GMH is in default under the Note.

     RESPONSE:  Admit.


REQUEST FOR ADMISSION NO. 39:        Admit that You are in default under the Loan
Agreement.

     RESPONSE:  Deny.


REQUEST FOR ADMISSION NO. 40:        Admit that GMH is in default under the Loan
Agreement.

     RESPONSE:  Admit.


REQUEST FOR ADMISSION NO. 41:        Admit that You have not paid the unpaid balance
due on the Note.

     RESPONSE:  Deny as to Hira being an obligor to the Note.  Otherwise admit.


REQUEST FOR ADMISSION NO. 42:        Admit that You have not satisfied Your obligations
under the Guaranty.

     RESPONSE:  Deny.


REQUEST FOR ADMISSION NO. 43:        Admit that You breached the Guaranty.

     RESPONSE:  Deny.


**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES,
REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                    **App. 045**

Respectfully submitted,


/s/ Jules P. Slim
Jules P. Slim, Attorney
State Bar No.:  00793026
P. O. Box 140307
Irving, TX 75014
(214) 350-5183 direct
(214) 350-5184 facsimile
*jslim@slimlawfirm.com*
**ATTORNEY FOR CHETNA HIRA**


## CERTIFICATE OF SERVICE

I, the undersigned, Jules P. Slim, hereby certify that a copy of the above instrument was served on the following via the method described below this 5th day of May, 2017.

Robert P. Latham                    Sent via Email
State Bar No. 11975500
blatham@jw.com
Lindsey E. marsh
State Bar No. 24087977
lmarsh@jw.com
JACKSON WALKER LLP
2323 Ross venue, suite 600
Dallas, TX 75201
214-953-6000


/s/ Jules P. Slim
Jules P. Slim


**DEFENDANT CHETNA HIRA'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES, REQUEST FOR PRODUCTION and REQUEST FOR ADMISSIONS**
**EXHIBIT B-1**                    **App. 046**

STATE OF TEXAS           §
                         §
COUNTY OF DALLAS         §

## VERIFICATION

**CAME BEFORE** me on this day, Chetna Hira, who stated and deposed that (s)he is over the age of 21, has never been convicted on a felony, and is otherwise competent and authorized to sign this instrument.  The Affiant further stated and deposed that (s)he has read the above answers or amended answers to interrogatories respective hereto, and that the responses are within his/her personal knowledge, and are true and correct.   Deponent is not verifying information obtained from other persons including the requesting party his/her attorney, persons with knowledge of relevant facts, trial witnesses, and legal contentions.

**FURTHER AFFIANT SAITH NOT**

_Chetna Hira_
Chetna Hira

**SUBSCRIBED and SWORN** before me this 5th day of May, 2017.

Tejalben V Patel
My Commission Expires
08/08/2020
ID No. 130768677

SEAL:                    Notary Public in and for the State of Texas

**EXHIBIT B-1**                    **App. 047**